IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| DEANNA DIXON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CIV-15-196-R |
| BOARD OF COUNTY COMMISSIONERS OF OKLAHOMA COUNTY, et al., | ) | |
| Defendants. | ) | |

# ORDER

Defendants filed a Motion for Summary Judgment (Doc. No. 60). In lieu of a response to the motion, three days before such response was due, Plaintiff filed a Rule 56(d) Motion, which the Court has denied. (Doc. No. 75). As a result, the Court is without the benefit of a response from the Plaintiff. Even without a response from Plaintiff, the Court still must determine whether judgment for the moving party is appropriate under Federal Rule of Civil Procedure 56. *See Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir.2002).

> [A] party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party. The district court must make the additional determination that judgment for the moving party is "appropriate" under Rule 56. Summary judgment is appropriate only if the moving party demonstrates that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion. The court should accept as true all material facts asserted and properly supported in the summary judgment motion. But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment.

*Id.* at 1195. In other words, although certain facts are deemed admitted, Defendants' Motion is not confessed: the undersigned still must decide whether Defendants are entitled to judgment as a matter of law based upon the material facts asserted and properly supported in the Motions and applicable law. See Fed.R.Civ.P. 56(a), (c), (e)(3); *Reed*, 312 F.3d at 1195–96.).

Plaintiff, an African American woman, was employed as a supervisor with the Oklahoma County Juvenile Board until her termination in 2013. She was first hired in September 2001, and was promoted to the position of supervisor in 2006. James Saffle, Director of the OCJB, contends via affidavit that in August 2013 he was informed by two vendors that worked with the Bureau of their belief that Dixon was soliciting kickbacks and/or favors in exchange for vendor selection in the Court Services division. As a result, Director Saffle ordered an Internal Affairs investigation into the allegations. Daniel Hansen, the Bureau employee who investigates personnel and Bureau incidents, was designated to complete the investigation.

During the course of Hansen's investigation Saffle received information from an employee of the Oklahoma City Public Schools, Tracy Alvarez, that Plaintiff was using her Bureau email address to communicate with the school about a student she mentored for her second job at Advanced Counseling.[1] Hansen was informed by a Bureau supervisor

---

[1] Plaintiff had received permission in March 2013 for secondary employment as required by Bureau policy. Unbeknownst to Director Saffle, however, Plaintiff had obtained the secondary employment in March, 2012. She indicated on her request that she would work approximately ten hours per week on Tuesdays, Thursdays and Saturdays. According to OCJB Policy the request was to be submitted to the employee's immediate supervisor and required approval of the Director, in this case, Defendant Saffle.

2

Plaintiff might be working her Advanced Counseling job while being paid by the Bureau and on August 27, 2013, was authorized by Defendant Saffle to include these allegations in his investigation.

As part of the investigation Defendant Hansen visited Advanced Counseling on August 27, 2013. They provided him with timesheets for Plaintiff's work with Advanced Counseling. Mr. Hansen noticed that Plaintiff's work had started in March 2012, despite the fact that her request for secondary employment had not been submitted until one year later. Frances Carillo of Advanced Counseling told Hansen that she was concerned about the claim that Dixon was misstating her time because the billing was submitted to Medicare and accurate time needed to be reflected. Hansen compared the records from OCJB and Advanced Counseling and discovered that on 57 days Dixon billed hours on Advanced Counseling clients during her regular hours with the Bureau and on thirteen days when she was off "sick" from her job at OCJB she billed with Advanced Counseling, totaling 131.75 hours.[2]

The next day Hansen shared his findings with Defendant Saffle who told him to consult with Plaintiff's supervisor, Christe Sweat. Plaintiff was placed on administrative leave by Christe Sweat that same day. Hansen continued his investigation by interviewing Vicki Cargill, a probation officer. Cargill allegedly stated that although she did not know exactly when Dixon was gone from her office, she was aware that there were days when

---

[2] Bureau policy permits the use of sick leave only for illness. Four of the thirteen days Plaintiff did not report to work at the Bureau at all.

Dixon left for lunch and did not return at all or until much later, and that she was aware of Dixon's second job and suspicious that she was working that job on OCJB time.

Hansen reported that on September 5, 2013, he went to Plaintiff's home to interview her. He took J-me Overstreet with him as a witness. Dixon explained her position on the overlap of the billing, telling Hansen that she worked for Advanced Counseling after hours, but Advanced Counseling had trained her to bill her time to Medicaid to reflect that she had not offered services on its behalf after 8:00 p.m.

After speaking with Ms. Dixon, Mr. Hansen and Ms. Overstreet spoke with an employee of Advanced Counseling who denied that Plaintiff was trained to enter her time in the manner Plaintiff described. The employee, Francis Carrillo, was allegedly flabbergasted at the suggestion that Advanced Counseling instructed its employees to falsify the time of their work on their billing.

Hansen also conducted a review of Plaintiff's Bureau computer and concluded she had used the computer with regard to her Advanced Counseling position. He found the email to the Oklahoma City Public Schools from her county e-mail address, but Plaintiff had changed the signature block to include her Advanced Counseling title and contract information. He also located emails from her county email address to other employees of Advanced Counseling about Advanced Counseling business and to the YMCA whereby Plaintiff sought to gain membership for her Advanced Counseling clients.

Hansen prepared a report for Director Saffle, which he delivered on October 1, 2013. The report detailed at least 18 violations of Bureau policies. Hansen submitted a supplemental report on October 2, 2013, after interviewing Tracy Alvarez of the Oklahoma

City Public Schools. According to this report, Ms. Alvarez indicated that she had concerns about Ms. Dixon because Ms. Dixon was asking to see her Advanced Counseling clients during the school day, when Ms. Alvarez knew she was also employed by OCJB. Ms. Dixon apparently first reached out to Ms. Alvarez in February 2012, seeking to be added to a list of approved school based counseling providers.

After receiving the reports Director Saffle made the determination to terminate Plaintiff's employment for misconduct, which he did on October 6, 2013. His affidavit avers that the decision was based on numerous factors including: Plaintiff accepted employment with Advanced Counseling a year before she submitted a Second Job Request, which was required to be approved before a second job was obtained; Plaintiff had used her work email and computer to assist in her second job with Advanced Counseling; Dixon had changed the signature block on her Bureau email account to include her title and contact information for Advanced Counseling, and had attempted to gain access to students in the Oklahoma City Public Schools who were not on OCJB probation in conjunction with her job at Advanced Counseling; and, she had inappropriate images saved on her work computer. Following her termination Plaintiff filed this action alleging discrimination on the basis of race in violation of Title VII of the Civil Rights Act and 42 U.S.C. § 1983.

Under Title VII, it is unlawful "to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove a Title VII violation through either direct or circumstantial evidence. *See Furr v. AT&T Techs., Inc*., 824 F.2d 1537,

5

1548-49 (10th Cir. 1987). Direct evidence includes "oral or written statements on the part of a defendant showing a discriminatory motivation. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000). There is no direct evidence of a Title VII violation in the record, and therefore, the Court evaluates Plaintiff's Title VII claims according to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *See Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). Under the *McDonnell Douglas* framework, Plaintiff bears the initial burden of establishing a *prima facie* case of [discrimination or retaliation]. Once the plaintiff has established a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. If Defendant makes this showing, Plaintiff must then show that Defendant's justification is pretextual. *Kendrick*, 220 F.3d at 1226.

"[T]he articulation of a plaintiff's *prima facie* case may well vary, depending on the context of the claim and the nature of the adverse employment action alleged." *Id*. But a common element critical to all *prima facie* cases is that the plaintiff must demonstrate that "the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'" *Plotke v. White,* 405 F.3d 1092, 1100 (10th Cir. 2005)(*quoting Kendrick v. Penske Transp. Servs., Inc*., 220 F.3d 1220, 1227 (10th Cir. 2000)). Plaintiff is an African American woman who was terminated by Defendant, however, the evidence fails to establish that her termination took place under circumstances giving rise to an inference of discrimination. Because the burden of establishing a *prima*

*facie* case of discrimination is not onerous, the Court will assume for purposes of summary judgment that there is sufficient evidence to support a *prima facie* case.

The burden therefore shifts to Defendant to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination. *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005). Defendant has carried its burden by asserting that Plaintiff was terminated because Director Saffle, based on the investigation conducted by Defendant Hansen, determined that Plaintiff was using time during which she was being paid to perform services in her capacity as an employee of the OCJB to perform work for Advanced Counseling. He also determined that contrary to policy that she had not obtained permission for the second job until one year after she started working said job. He also concluded that Plaintiff's Medicaid billing for her Advanced Counseling work was fraudulent, not that she had not performed the work for which she was submitting bills for payment, but rather that the billing submitted did not accurately reflect when she was performing the services for which she was seeking compensation. He also concluded that Plaintiff had used her position at OCJB, via her county email account, to request access to students of the Oklahoma City Public Schools that she was mentoring via her job with Advanced Counseling, which was inappropriate. Accordingly, Defendant has articulated a legitimate non-discriminatory reason for terminating Plaintiff.

As a result, the burden thus shifts back to Plaintiff to establish a genuine issue of material fact that these reasons were pretextual. In so doing, Plaintiff must show that her employer's "proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are]

unworthy of belief." *Conroy v. Vilsack*, 707 F.3d 1163, 1172 (10th Cir. 2013) (alteration in original) (internal quotation marks omitted). But in assessing the explanation for the termination, the Court examines "the facts as they appear to the person making the decision." *Id*. at 1174 (emphasis in original) (internal quotation marks omitted). The Court does not "ask whether the employer's proffered reasons were wise, fair or correct; we ask only whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Debord v. Mercy Health Sys. of Kan., Inc.,* 737 F.3d 642, 655 (10th Cir. 2013) (second alteration in original) (internal quotation marks omitted).

Here, there is simply no evidence that Defendant's proffered reason for Plaintiff's termination was a pretext for race discrimination. Plaintiff admitted certain facts in her deposition that support Defendant's termination decision. Specifically, Ms. Dixon admitted that she used her county email address to send an email to the Oklahoma City Public Schools to gain access to students she mentored for her second job at Advanced Counseling. Although she offered a potentially exculpatory explanation for why she documented her hours for Advanced Counseling in a manner that indicated she was working for Advanced Counseling while on the clock for the Bureau, her explanation was not supported by management at Advanced Counseling. Plaintiff contends, with regard to the alleged improper use of her work email to sell purses, that other employees who committed similar infractions were not terminated. The record, however, does not identify any such person by name, nor does the record indicate if use of office email in an attempt to sell goods was the only transgression alleged against any of the unidentified persons. Additionally, there is no explanation provided for Plaintiff's use of sick leave for her job

with the OCJB on days when she billed on behalf of Advanced Counseling nor is there any dispute that contrary to OCJB policy, Plaintiff did not obtain authorization from Defendant Saffle for her secondary employment until one year after she obtained the job. Furthermore, Plaintiff was either billing on behalf of Advanced Counseling during hours she was being paid by the OCJB for her work on its behalf or she was submitting fraudulent billing records on behalf of Advanced Counseling for reimbursement by Medicaid because she did not accurately report the time she spent with her clients. Regardless of which version is accurate, Director Saffle's decision to rely on the inaccuracies as a basis for termination does not support a finding of pretext. In short, there is no evidence to support Plaintiff's contention that her termination from employment at the Oklahoma County Juvenile Board was based on her race in violation of Title VII.

With regard to Plaintiff's claim of racial discrimination in employment under 42 U.S.C. § 1983, the same underlying analysis applies in the Court's determination of whether Plaintiff can avoid summary judgment. "In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under ... § 1983 or Title VII." *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) (quoting *Baca v. Sklar*, 398 F.3d 1210, 1218 n.3 (10th Cir. 2005)). Because the Court has determined that there are no genuine disputes of material fact and Plaintiff has not established race discrimination under Title VII, her similar claims must fail under § 1983. Plaintiff has not provided evidence of race discrimination with regard to her termination so as to establish a violation of her Equal Protection rights and as a result, Defendants are entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 claim.

This conclusion extends to the individually named Defendants, because there is simply no evidence of differential treatment of Plaintiff based on her race.[3] As noted above, Director Saffle, who made the termination decision, avers that he terminated Plaintiff based on the numerous policy violations unearthed by Defendant Hansen. There is no evidence that Defendant Hansen conducted his investigation in such a manner that gives rise to an inference of discrimination on his part with regard to the process of the investigation or its outcome. Defendant Meadows' sole participation in the events related to the investigation and termination of the Plaintiff was that she relayed the concern of Ms. Cargill, Plaintiff's co-worker, to Mr. Hansen. There is nothing in her limited involvement that indicates her decision to relay this information was premised on Plaintiff's race. Defendant Vicki Cargill initially raised a complaint that Plaintiff was performing non-Bureau work while on Bureau time. Nothing in her complaint, which is supported by the time sheets obtained by the Bureau from Advanced Counseling, is tied by any evidence to an alleged discriminatory motive. Defendant J-Me Overstreet was acting Personnel Manager for the Bureau and her only role prior to Plaintiff's termination was her presence during the interview of Plaintiff by Investigator Hansen regarding the overlap of her Advanced Counseling billing with her OCJB work hours. Ms. Overstreet also added an employment evaluation form to Plaintiff's file after her termination to reflect the findings of the investigation. The form was a post-

---

[3] In her deposition Plaintiff attempted to assert that certain of the individual employees were racist not because of their actions, but because of the actions of other persons with whom they associated. For example, Defendant Hansen was friends with a co-worker, Jim Smith, who sometimes referred to himself as a redneck and was friendly with some Bureau employees who had been disciplined in the past for a racial incident. There is no evidence, however, that Mr. Hansen or any of the individually named employee Defendants ever made racially derogatory comments or engaged in behavior that could be categorized as racist.

termination evaluation and was not signed by Plaintiff nor did it replace any evaluation in Plaintiff's personnel file. From review of the post-termination document it is apparent that it was intended to guide any future rehiring decisions regarding Plaintiff. There is simply no evidence that her presence at the interview or her decision to place a post-termination evaluation in Plaintiff's personnel file was motivated by Plaintiff's race.[4]

Accordingly, and for the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. No. 60) is hereby GRANTED. Defendants' Motion for Default Judgment (Doc. No. 77), which seeks summary judgment on the basis that their motion for summary judgment was not subjected to a response is granted to the extent it is consistent with the above.

IT IS SO ORDERED this 17th day of November, 2016.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[4] Plaintiff testified in her deposition that she believed Mr. Saffle wanted to remove employees from the Bureau to make room for white employees from the Department of Corrections where he had been employed before taking charge of the Bureau.